**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| SYLVIA RABO, an individual, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 0:25-cv-04407-ECT-LIB |
| v. | ) ) | **DEFENDANT** |
| | ) | **ESSENTIA HEALTH'S REPLY** |
| ESSENTIA HEALTH, a non-profit | ) | **MEMORANDUM OF LAW IN** |
| Minnesota corporation, | ) | **SUPPORT OF ITS PARTIAL** |
| | ) | **MOTION TO DISMISS** |
| Defendant. | ) | **AMENDED COMPLAINT[DKT. 12]** |
| | ) | |

# TABLE OF CONTENTS

**PAGE**

ARGUMENT...................................................................................................................... 1

I.    Plaintiff's Sexual Harassment/Hostile Work Environment Claim
      (Count II) Fails. ................................................................................................. 1

II.   Any Claim For Quid Pro Quo Sexual Harassment (Count II)
      Similarly Fails. ................................................................................................. 6

III.  Plaintiff's Negligent Supervision/Retention Claim (Count IV) Fails. ......... 7

IV.   Plaintiff's Wrongful Termination In Violation Of Public Policy
      Claim (Count V) Fails. ..................................................................................... 9

V.    Plaintiff's Intentional Infliction Of Emotional Distress Claim (Count
      VI) Fails............................................................................................................ 10

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Al-Saadoon v. Barr,*
   973 F.3d 794 (8th Cir. 2020) ................................................................12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...............................................................................7

*Benassi v. Back & Neck Pain Clinic, Inc.,*
   629 N.W.2d 475 (Minn. Ct. App. 2001)................................................7

*Bush v. Penske Truck Leasing Co., LP.*
   No. CIV 06-1110 RHK/AJB, 2007 WL 1321853 (D. Minn. May 4, 2007).......................5

*Dahlberg v. Lutheran Soc. Servs. of N.D.,*
   625 N.W.2d 241 (N.D. 2001) ...............................................................13

*Doe YZ v. Shattuck-St. Mary's Sch.,*
   214 F. Supp. 3d 763 (D. Minn. 2016)................................................8, 9

*Geist-Miller v. Mitchell,*
   2008 WL 3898207 (Minn. Ct. App. Aug. 26, 2008) .............................1

*Hubbard v. United Press Int'l, Inc.,*
   330 N.W.2d 428 (Minn. 1983)............................................................13

*Hysjulien v. Hill Top Home of Comfort, Inc.,*
   827 N.W.2d 533 (N.D. 2013) .....................................................2, 3, 4, 5

*Jose v. Norwest Bank N.D., N.A.,*
   599 N.W.2d 293 (N.D. 1999) ..............................................................10

*Koehler v. County of Grand Forks,*
   658 N.W.2d 741 (N.D. 2003) ................................................................7

*Krause v. Bobcat Co.,*
   297 F. Supp. 2d 1212 (D.N.D. 2003)...................................................13

*Lange v. Nat'l Biscuit Co.,*
   211 N.W.2d 783 (Minn. 1973).............................................................11

*Lee v. Walstad,*
   368 N.W.2d 542 (N.D. 1985) ..............................................................10

*Morgan Distrib. Co. v. Unidynamic Corp.,*
   868 F.2d 992 (8th Cir. 1989) ...............................................................12

*Nelson v. Gillette,*
    571 N.W.2d 332 (N.D. 1997) .................................................................8, 11

*Onyiah v. St. Cloud State Univ.,*
    655 F. Supp. 2d 948 (D. Minn. 2009).........................................................13

*Richard v. Washburn Pub. Sch.,*
    809 N.W.2d 288 (N.D. 2011) ................................................................7, 8

*Richter v. Advance Auto Parts, Inc.,*
    686 F.3d 847 (8th Cir. 2012) ....................................................................10

*Sadler v. Basin Elec. Power Coop.,*
    409 N.W.2d 87 (N.D. 1987) .....................................................................13

*Sandoval v. Am. Bldg. Maint. Indus., Inc.,*
    765 F. Supp. 2d 1138 (D. Minn. 2010)........................................................2

*Tashman v. Advance Auto Parts, Inc.,*
    63 F.4th 1147 (8th Cir. 2023) ...................................................................12

*Todd v. Ortho Biotech, Inc.,*
    175 F.3d 595 (8th Cir.1999) .......................................................................5

*Van Klootwyk v. Baptist Home, Inc.,*
    665 N.W.2d 679 (N.D. 2003) ....................................................................11

**Statutes, Rules & Regulations**

29 C.F.R. § 1604.11(d) .....................................................................................5

Fed. R. Civ. P. 12(b)(6) ....................................................................................1

Minnesota Human Rights Act .......................................................................1, 2

N.D.C.C. 14-02.4-02.....................................................................................1, 3, 5

N.D.C.C. § 14-02.4-03.....................................................................................13

**Other Authorities**

AmSECT, About Us, https://amsect.org/about/about-us (last visited Feb. 20,
    2026) .........................................................................................................9

AmSECT, Standards and Guidelines, https://amsect.org/policy-
    practice/amsects-standards-and-guidelines.................................................9

Restatement (Second) of Agency, § 228 .........................................................11

Defendant Essentia Health ("Essentia"), by and through the undersigned counsel, submits this Reply Memorandum of Law in support of its Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

In response to this Rule 12 motion, Plaintiff must articulate how facts pleaded in her Amended Complaint state a claim for relief. Plaintiff has failed to make this showing. Plaintiff fails to identify any facts showing Essentia was on notice of Neugebauer's alleged sexual harassment to establish liability for her sexual harassment/hostile work environment and negligent supervision/retention claims, fails to identify any constitutional or statutory provision violated by her discharge to establish liability on her wrongful discharge claim, and fails to articulate any facts showing that Neugebauer's alleged harassment was done in furtherance of Essentia's business to establish liability for her IIED claim. Accordingly, Counts II, IV, V, and VI of Plaintiff's Amended Complaint must be dismissed.

## **ARGUMENT**

### I.    **PLAINTIFF'S SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIM (COUNT II) FAILS.**

Sexual harassment claims under North Dakota statute generally mirror sexual harassment claims under both the Minnesota Human Rights Act ("MHRA") and Title VII in structure, in that the statute outlines both what is typically referred to as "quid pro quo"[1] sexual harassment (N.D.C.C. §§ 14-02.4.02(6)(a) and (b)) and "hostile work environment" sexual harassment (N.D.C.C. § 14-02.4-02(6)(c)). *See Geist-Miller v. Mitchell*, 2008 WL

---

[1] Despite this statutory language and its construction in other contexts, North Dakota courts do not appear to have analyzed cases of quid pro quo sexual harassment.

1

3898207, at *2 (Minn. Ct. App. Aug. 26, 2008) (making the distinction in claims with respect to the similarly-structured MHRA).

Plaintiff's claim for sexual harassment is expressly styled as a claim for "hostile work environment" under North Dakota Statute. (Amended Complaint at Count II.) To establish a prima facie case of hostile work environment based on sexual harassment under North Dakota law, a plaintiff must show the employer knew or should have known of the harassment and failed to take proper remedial action. *Hysjulien v. Hill Top Home of Comfort, Inc.*, 827 N.W.2d 533, 544 (N.D. 2013). Plaintiff does not (because she cannot) dispute that she **never** reported sexual harassment to Essentia. Instead, Plaintiff argues that "Essentia was on notice of sexual harassment" because she complained generally of "bullying remarks, abusive behavior, and racial slurs." (Opposition at 24.) But "bullying remarks," "abusive behavior," and "racial slurs" are not the same as sexual harassment, and nothing in Plaintiff's documented reports show that she ever complained of harassment of a **sexual** nature.  (*See* Moving Br., Exhibits A–C, F.) This alone is fatal to Plaintiff's sexual harassment claim, because there is no basis upon which Essentia knew or should have known she was subjected to sexual harassment for purposes of a hostile work environment. *Hysjulien*, 827 N.W.2d at 544; *see also Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 765 F. Supp. 2d 1138, 1176 (D. Minn. 2010) (dismissing plaintiff's claim of hostile work environment sexual harassment where plaintiff was required to prove that employer "knew or should have known of the harassment and failed to take prompt remedial action" because there was no evidence that the plaintiff's sexual harassment was ever reported to

2

management or that there was an open and pervasive environment of harassment at the plaintiff's worksite).

To avoid this reality, Plaintiff attempts to hold Essentia vicariously liable for Neugebauer's alleged actions on the grounds that he is a supervisor. (Opposition at 26-27.) But Plaintiff's own briefing makes clear that North Dakota (unlike federal law and Minnesota law) does not maintain a strict liability theory for supervisory sexual harassment hostile work environment claims.

First, the statute itself makes plain that, for a hostile work environment claim, "the employer is responsible for the acts of those of its supervisory employees ***if it knows or should know*** of the existence of the harassment and fails to take timely and appropriate action." N.D.C.C. 14-02.4-02. Notwithstanding this unambiguous language, Plaintiff points to *Hysjulien* to assert that North Dakota "recognize[s] imputed knowledge when the sexual harassment is conducted by a supervisor." (Opposition at 27.) Plaintiff says:

> The facts in Hysjulien are similar and helpful in deciding this case. In Hysjulien, the plaintiff's supervisor sexually assaulted her and engaged in a campaign to harass her throughout her employment. The plaintiff never notified anyone at the company regarding his behavior.[2] The Court specifically stated the supervisor's conduct in the alleged assault, as an administrator and chief executive officer, may alone have established liability had Hysjulien timely filed her EEOC complaint and/or her lawsuit. *Hysjulien*, 827 N.W.2d at 548.

(*Id.*)

But that is not what the court in *Hysjulien* said. The court, in evaluating a sexual harassment claim under <u>both</u> the North Dakota Human Rights Act ("NDHRA") and Title

---

[2] Notably, Plaintiff concedes the facts in this case are similar to the facts in *Hysjulien* in that the plaintiffs in both cases never reported sexual harassment.

3

VII, concluded that because *Hysjulien* never complained of the assault during her employment <u>and</u> she was late in filing her Charge of Discrimination for her Title VII claim, she had no cause of action:

> Armitage's conduct in the alleged assault, as Hill Top's administrator and chief executive officer, may alone have established liability on a hostile work environment theory ***had Hysjulien timely complained of the assault.*** Because Hysjulien did not timely complain of the assault, the length of time passing before she filed her administrative charge means the assault cannot form the basis of the hostile work environment liability.

*Hysjulien*, 827 N.W.2d 533 at 548.

Here, because Plaintiff asserts only an NDHRA claim, the case only turns on whether she timely complained of the assault. She did not, and *Hysjulien* does nothing to support her strict liability argument.

In a second attempt to save this claim, Plaintiff baldly asserts that it "appear[s] North Dakota follows other jurisdictions like Minnesota that imputes [sic] sexual harassment of supervisor to the employer." (Opposition 27-28.) Most tellingly, Plaintiff does not point to a single North Dakota case to support this proposition and concedes that none exist. (*Id.* ("There do not seem to be any other cases in North Dakota touching on this issue of imputed knowledge.")).

Plaintiff then spills a lot of ink discussing the state of the law in Minnesota and under Title VII. Neither is relevant here, where Plaintiff's claim is plead solely under the NDHRA. (*See* Opposition at 28-31.) Title VII and the NDHRA impose different knowledge requirements for supervisor liability in the context of hostile work environment sexual harassment claims:

4

| NDHRA | "and in the case of employment, the employer is responsible for its acts and those of its supervisory employees ***if it knows or should know*** of the existence of the harassment and fails to take timely and appropriate action." N.D.C.C. § 14-02.4-02. |
|---|---|
| Title VII | an employer is liable for acts of sexual harassment where the "employer [] ***or its agents or supervisory employees***[] knows or should have known of the conduct." 29 C.F.R. § 1604.11(d) (emphasis added). |

The difference between these knowledge standards is significant, as this Court held in *Bush v. Penske Truck Leasing Co., LP.*, No. CIV 06-1110 RHK/AJB, 2007 WL 1321853, at *3 (D. Minn. May 4, 2007). There, this Court explained the history of strict liability for harassing supervisors under the Minnesota Human Rights Act ("MHRA"). Tellingly, the MHRA historically used the same "know or should know" language that the NDHRA contains today. Because of that language, the Eighth Circuit declined to adopt a strict liability standard for sexual harassment claims under the MHRA. *Todd v. Ortho Biotech, Inc.,* 175 F.3d 595, 599 (8th Cir.1999). Following that decision, the Minnesota legislature amended the definition of sexual harassment under the MHRA to mirror Title VII's. Only then—after the "known or should know" language was removed from the definition—has the Court applied strict liability to MHRA claims. *Bush*, 2007 WL 1321853, at *3.

For claims of hostile work environment sexual harassment, the plain text of the statute and the North Dakota Supreme Court's ruling in *Hysjulien* make plain that Plaintiff is required to show that Essentia knew or should have known of the harassment by Neugebauer and failed to take remedial action. She cannot make that showing, and her hostile work environment sexual harassment claim (Count II) fails.

5

## II.    ANY CLAIM FOR QUID PRO QUO SEXUAL HARASSMENT (COUNT II) SIMILARLY FAILS.

While Plaintiff's Count II is styled as a "hostile work environment" claim, there are elements of Plaintiff's briefing that suggest she is asserting a quid pro quo sexual harassment claim—i.e., "Rabo was essentially fired three days after refusing Neugebauer's unwelcome sexual advance." (Opposition at 24.) Assuming North Dakota law recognizes such a cause of action (there are no cases analyzing it), the Court should analyze Plaintiff's claim for what she has alleged it is—a hostile work environment claim. As discussed above, that claim fails.

Regardless, any claim for quid pro quo sexual harassment would similarly fail. From the face of Plaintiff's Complaint, she has not pled that she "refused Neugebauer's unwelcome sexual advances." While Plaintiff alleges a number of sexual gestures in her Amended Complaint, she does not indicate that she responded to them in any way whatsoever, much less that she rejected or refused them—indeed, she did not even report them in her many meetings with Essentia's HR team. (Amended Complaint ¶¶ 186, 190, 208.)

The only comment by Neugebauer that Plaintiff alleges she uttered any response to was a comment that she was "safe" to do whatever she wanted in Neugebauer's office. (*Id.* at ¶ 208.) Plaintiff does not so much as plead that she reasonably viewed this comment as one that was sexual in nature. And given the wide variation of comments alleged in the Complaint (i.e. "Good morning, Ape Sylvia"), such an inference cannot be fairly drawn. Indeed, pursuant to Plaintiff's own allegations, *at this very time* she and Mr. Neugebauer were discussing appropriate places for Plaintiff to breastfeed, and Mr. Neugebauer "did not

6

like the fact that Rabo was going to the bathroom to pump breast milk." (*Id.* at ¶¶ 196-199.) Stating Plaintiff was "safe" to do whatever she wanted in an office is <u>not</u> *ipso facto* a request for a sexual favor or a sexual advance as a matter of law, absent any pleading by Plaintiff to support such a theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"); *see also Benassi v. Back & Neck Pain Clinic, Inc.*, 629 N.W.2d 475, 481 (Minn. Ct. App. 2001) (saying "it is unclear whether" "lay down and spread [your] legs and earn [your] money" should be viewed as a sexual advance).

And even if it was, Plaintiff has not taken the next step to plead facts to support that her rejection of that "request" was causally linked to the termination of her employment. (*See* Amended Complaint at ¶¶ 212-234.) For this reason, too, even Plaintiff's sexual harassment claim (Count II) fails.

## III.   PLAINTIFF'S NEGLIGENT SUPERVISION/RETENTION CLAIM (COUNT IV) FAILS.

To establish a claim of negligent supervision or retention, Plaintiff must show that Essentia failed to exercise ordinary care in supervising or retaining Neugebauer to prevent reasonably foreseeable harm. *Koehler v. County of Grand Forks*, 658 N.W.2d 741, 749 (N.D. 2003); *Richard v. Washburn Pub. Sch.*, 809 N.W.2d 288, 297 (N.D. 2011). In Count IV, Plaintiff alleges that "Essentia knew or should have known that Neugebauer posed a risk of engaging in **sexually inappropriate** conduct" and "failed to properly supervise, train, discipline, and/or terminate Neugebauer." (Am. Compl. ¶¶ 257-58, emphasis added.) Plaintiff's claim fails because, as discussed above, nothing in the Amended Complaint

7

establishes that Essentia knew or should have known of "sexually inappropriate conduct" by Neugebauer.

In her Opposition, Plaintiff argues that Neugebauer's alleged sexual harassment was reasonably foreseeable because Plaintiff complained of non-sexual mistreatment by Neugebauer, including "bullying remarks," "racial slurs," feeling "unsafe" as a Black female, "hostile" check-ins that required the "victim to return to the abuser," and "workplace violence." (Opposition at 34.) Plaintiff also suggests that because there are "volumes of cases in which supervisors abused their power" elsewhere in the world, it is conceivable it would happen here. (*Id.* at 33-34.) But as stated in Plaintiff's proffered case, *Doe YZ v. Shattuck-St. Mary's Sch.*, "[i]n determining whether a danger is foreseeable, courts look at whether the ***specific*** danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility[]" and "[s]exual abuse will rarely be deemed foreseeable in the absence of prior similar incidents." 214 F. Supp. 3d 763, 786 (D. Minn. 2016) (emphasis added) (internal citations and quotations omitted).

Indeed, Plaintiff's proffered cases make clear that sexual harassment is only deemed foreseeable when the employer specifically receives a complaint of inappropriate sexual conduct, as in *Richard v. Washburn Pub. Sch.,* 809 N.W.2d 288, 298 (N.D. 2011), or where the potential for sexual abuse is well known based on the type of relationship between the abuser and abused. *See Nelson v. Gillette*, 571 N.W.2d 332 (N.D. 1997) (holding there was an issue of fact as to whether social worker's alleged sexual abuse of juvenile, which occurred in his office and vehicle during official business, was reasonably foreseeable to employer because "the potential for sexual abuse of a child is widely known and

foreseeable[,]" and because "[a] number of cases have concluded that sexual contact between a counselor and a patient is foreseeable"); *Doe YZ*, 214 F. Supp. 3d at 786 (holding teacher's sexual abuse of students was reasonably foreseeable to school because sexual abuse of students by teachers is a recognized danger and because reports of the teacher being present with naked students was well known). Neither is true here.

Because Plaintiff fails to plead that it was "reasonably foreseeable" that Neugebauer "posed a risk of engaging in **sexually inappropriate** conduct" that Essentia had a duty to prevent, her negligence claims fail. Count IV must be dismissed.

## IV.    PLAINTIFF'S WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM (COUNT V) FAILS.

Following Plaintiff's Opposition, it is clear that Plaintiff's wrongful termination publicly policy claim is based on her opposition to working long hours, which Plaintiff argues violates AmSect Guidelines for staffing (non-mandatory guidelines set by a professional organization)[3] and the "strong public policy against employees having to work long hours." (*See* Opposition 36-42.) However, Plaintiff points to no specific **legal** provision, i.e., a "constitutional provision, statute, regulation, or rule promulgated by a

---

[3] AmSECT is a professional association that supports the educational and professional needs of perfusionists in the practice of extracorporeal circulation technology. (AmSECT, About Us, https://amsect.org/about/about-us (last visited Feb. 20, 2026).) AmSECT has published Standards and Guidelines for Perfusion Practice. (Am. Compl. ¶ 22.) According to AmSECT, these guidelines "were created as a checklist or template to ensure departments follow what is expected of a perfusion team by its national society" but are "**not** mandatory." (AmSECT, Standards and Guidelines, available at https://amsect.org/policy-practice/amsects-standards-and-guidelines (last visited Feb. 20, 2026) (emphasis added).)

governmental body," violated by her discharge, as required to establish a wrongful discharge claim. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 855 (8th Cir. 2012).

Instead, Plaintiff attempts to save her claim by citing to Missouri and California cases that have imposed looser guidelines for what constitutes "public policy" and argues that the Fair Labor Standards Act ("FLSA") (which does not apply to exempt employees like Plaintiff) and the Occupational Safety and Health Administration ("OSHA") generally recognize that long working hours can be detrimental to the health and safety of workers. (Opposition at 39-40.) Notably, Plaintiff does not (because she cannot) point to any provision of the of the FLSA, OSHA, or any other law that her working hours violated.

North Dakota law is clear: a claim of wrongful discharge in violation of public policy "**must** be evidenced by a **constitutional or statutory provision.**" *Jose v. Norwest Bank N.D., N.A.*, 599 N.W.2d 293, 298 (N.D. 1999) (emphasis added) (affirming dismissal of wrongful discharge claim on summary judgment where plaintiff alleged that he was terminated in retaliation for participating in an internal employee investigation but pointed to no constitutional or statutory provision prohibiting retaliation in such circumstances); *see also Lee v. Walstad*, 368 N.W.2d 542, 547 (N.D. 1985) (declining to recognize public policy exception to at-will employment where claimant "defined no clear public policy which his removal violate[d]"). Because Plaintiff points to no constitutional or statutory provision that her termination violates, her wrongful termination claim fails. Count V must be dismissed.

## V.    PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT VI) FAILS.

The parties here do not disagree on the standard for an IIED claim, as annunciated

by the North Dakota Supreme Court: an employer is only liable for IIED if the conduct at issue was within the scope of the servant's employment. *Van Klootwyk v. Baptist Home, Inc.*, 665 N.W.2d 679, 685 n.2 (N.D. 2003) (emphasis added). Under North Dakota law, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or little actuated by a purpose to serve the master." *Nelson*, 571 N.W.2d at 335 (citing Restatement (Second) of Agency, §228). In other words, as Plaintiff's Opposition concedes, under ***North Dakota law***, whether the conduct was undertaken with "a purpose to serve the master" is directly relevant to the inquiry. (Opposition at 43-44.)

Inexplicably, then, Plaintiff begins her argument by relying on a string of ***Minnesota cases*** wherein the ***Minnesota Supreme Court*** overturned the previous ***Minnesota law*** which required a showing that "the employee's acts were motivated by a desire to further the employer's business." (Opposition at 45 (citing *Lange v. Nat'l Biscuit Co.*, 211 N.W.2d 783, 785 (Minn. 1973)). Of course, these cases are inapposite (and irrelevant) here, where ***North Dakota's*** law requires the opposite. Under ***North Dakota law***, Plaintiff must show that the alleged actions were taken in furtherance of the employer's business. *Nelson*, 571 N.W.2d at 335.

And Plaintiff advances no argument on that front. Plaintiff does not, because she cannot, explain how Neugebauer's alleged actions: "repeatedly directing vile, racist, and demeaning racial slurs toward Plaintiff, a Black employee, including referring to her as a 'nigger,' an 'ape,' and a 'baboon' among other things" was authorized by Essentia or committed in furtherance of Essentia's business instead of in furtherance of his own

11

interests. (Amended Complaint at ¶ 265.) Thus, for the reasons stated in Essentia's moving brief, this claim must be dismissed. *Tashman v. Advance Auto Parts, Inc.*, 63 F.4th 1147, 1154–55 (8th Cir. 2023) (stating that employer is not liable under agency theory for IIED when the acts are not within the scope of employment and are forbidden).

Rather than addressing the element of the claim for which Essentia seeks dismissal, Plaintiff focuses instead on opposing an argument Essentia never made: urging the Court to conclude that Neugebauer's alleged commentary was extreme and outrageous. (Opposition at 47-50.) This issue is not before the Court on Essentia's motion.

Finally, appearing to recognize that the commentary allegedly made by Neugebauer could not conceivably fall within the scope of his employment under North Dakota law, Plaintiff ends by arguing that the Court should consider *other* acts by Neugebauer that *are more* within the scope of his employment, including (1) requiring her to work long hours; (2) calling her lazy; (3) accusing her of violating rules; (4) placing her on a performance improvement plan; and  (5) terminating her employment, among others. (Opposition at 50-51.) First and foremost, these acts do not form the basis of Plaintiff's IIED claim, as pled in her Complaint. (Amended Complaint at ¶¶ 264-272.) Plaintiff cannot amend her claim now through briefing to be something it was not pled to be. *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) (citing *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

But second, these routine employment management functions, while Plaintiff may have found them unpleasant, do not arise to IIED as a matter of law. *See Krause v. Bobcat*

*Co.*, 297 F. Supp. 2d 1212, 1219 (D.N.D. 2003) (holding that employment termination cannot form the basis for an IIED claim); *Dahlberg v. Lutheran Soc. Servs. of N.D.*, 625 N.W.2d 241, 249 (N.D. 2001) (stating that because any termination "produces stress and mental anguish . . . the test is not whether or not the termination was traumatic, but whether or not the termination was outrageous"); *Sadler v. Basin Elec. Power Coop.*, 409 N.W.2d 87, 90 (N.D. 1987) (employer's termination of employee did not provide grounds for employee's cause of action for intentional infliction of emotional distress); *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 971 (D. Minn. 2009) (stating "a work environment in which co-workers or supervisors criticize, taunt, or harass another employee, does not present the egregious conduct required for an IIED claim" nor do "negative comments concerning the Plaintiff's work performance," and dismissing plaintiff's IIED claim for failure to state a claim); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439–40 (Minn. 1983) (holding employer discipline and written and verbal criticism of employee's job performance are not extreme and outrageous). Plaintiff's IIED claim fails for this additional reason.

For all these reasons, Count VI must be dismissed.

## CONCLUSION

For the foregoing reasons, Essentia respectfully requests that the Court dismiss Plaintiff's claims for sexual harassment/hostile work environment in violation of N.D.C.C. § 14-02.4-03 (Count II); negligent supervision and retention (Count IV); retaliation/wrongful termination in violation of public policy (Count V); and intentional infliction of emotional distress (Count VI) in full.

13

**FAEGRE DRINKER BIDDLE & REATH LLP**

Dated: February 27, 2026

/s/ *Terran C. Chambers*
Terran C. Chambers, MN Atty #0396415
Hannah Camilleri Hughes, MN Atty #0401726
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
Email: *terran.chambers@FaegreDrinker.com*
Email: *hannah.hughes@FaegreDrinker.com*

*Attorneys for Defendant Essentia Health*

DMS_US.375526879.1